IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| PERRY PATTERSON | § | |
| v. | § | CIVIL ACTION NO. 5:19cv55 |
| CANDICE OAKES, ET AL. | § | |

<u>REPORT AND RECOMMENDATION</u>
<u>OF THE UNITED STATES MAGISTRATE JUDGE</u>

The Plaintiff Perry Patterson, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged deprivations of his constitutional rights. The lawsuit has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. As Defendants, Plaintiff names: Telford Unit mailroom supervisor Candice Oakes, Nurse Practitioner Jammie Barker, and officers Clemia Huey, Stephanie Arnold, and Amy Robinson. Of these Defendants, Nurse Practitioner Barker has been dismissed from the case.

**I. The Plaintiff's Claims**

Plaintiff's amended complaint (Dkt. No. 25) is the operative pleading in the lawsuit. In his amended complaint, Plaintiff asserts that on January 17, 2019, Oakes directed mailroom staff to seize his artwork, claiming prisoners cannot mail out items to be sold. He claims this violates TDCJ policy and is discriminatory to craft shop prisoners who sell items directly to guards and staff. According to Plaintiff, TDCJ rule 15.1(c) states that items can be sold as long as they do not depict nudity, violence, or reference to a committed offense. Plaintiff states he notified the Safe Prisons Coordinator several times prior to the incident, as required by the rule, and many times afterwards also.

According to Plaintiff, the TDCJ rule says that only notification is required and does not

1

mention a needed response or permission. In addition, he states he has previously sent out items to vendors with the approval or assistance of the property officer. However, the problem arose when Officer Oakes became the mailroom supervisor; Plaintiff states she "is obviously continuing the retaliation alleged in the first suit." Dkt. No. 25, p. 5. A warden's investigation found there had been no confiscation, which Plaintiff contends was contrary to the facts in the record.

Next, Plaintiff asserts that Officers Arnold, Robinson, and Huey were mailroom staff on January 17, 2019, and participated in the illegal seizure of Plaintiff's property, including art, envelopes, and postage. They also refused to review TDCJ policies and rules presented by Plaintiff on multiple occasions. Plaintiff contends Officers Oakes, Arnold, Robinson, and Huey violated his rights under the First, Fourth, and Tenth Amendments. He seeks declaratory and injunctive relief, compensatory and punitive damages, and court costs.

In Step One grievance no. 2019065956, signed on January 16, 2019, Plaintiff complains the mailroom kept his artwork even though he did the required "notification to the safe prisons program coordinator," and he still has the I-60 from Warden Townsend approving him for in-cell piddling [i.e. craft or art work]. He adds that he spoke to the new mailroom supervisor, who told him the new warden and the new safe prisons coordinator knew nothing about his having given notification. As a result, he has to resubmit, even though the rules do not provide for resubmission, nor do they say he must get approval, only that he has to give notice. He asked for his artwork back. The response to this grievance stated that according to property officer Rust, a search of records shows there has been no property taken from him since October 29, 2018, and the property at issue was mailed out per his request.

In his Step Two appeal of this grievance, Plaintiff asserts that the Step One response does not come close to addressing his complaint. The mailroom - not property officer Rust - took the property he was trying to mail to California and sent it to the Director's Review Committee. He has a receipt from 2016 showing he has given notice and he has sent artwork to vendors in the past. The response to this grievance says Plaintiff has not presented any evidence or information not considered at Step One and the Step One answer addressed his complaint. No conclusive evidence

of policy violations was found. Dkt. No. 25-3, pp. 5-8.

The next two exhibits attached by Plaintiff are typewritten copies of the Fifth Circuit's decision in his previous case and Rule 15.1 of the TDCJ Disciplinary Rules, concerning establishment of an unauthorized business. This rule prohibits exchanging offender-produced good or services for financial gain if the activity has not been the subject of prior notification to the unit safe prisons program coordinator in accordance with the Safe Prisons Plan. Dkt. No. 25-4, pp. 1-6.

Plaintiff next attaches a handwritten copy of a confiscation form, dated July 21, 2016, showing three small boards were confiscated. The disposition was that these were to be mailed to the individual shown below, listed as "ConArt" at an address in Lankin, North Dakota. Dkt. No. 25-4, p. 7.

A handwritten copy of a correspondence denial form, which is not dated, shows Plaintiff was denied two books from "Ink from the Pen" at an address in California. A box is checked showing Plaintiff wants to appeal the decision. At the bottom, Plaintiff noted several disposal options were available, but the unit staff kept the artwork, which is not a listed option and contrary to TDCJ rules. Dkt. No. 25-4, p. 8.

The final exhibit is a grievance signed on January 3, 2013, complaining of retaliation by Officer Studdard (now Oakes), in that she wrote him a disciplinary case for participating in horseplay even though the other inmates told her he was not involved. He stated he already has a lawsuit against her for doing the exact same thing. The response to this grievance stated Officer Studdard was contacted and stated she has not retaliated against him and has no knowledge of a lawsuit. The finding of guilt in the disciplinary case was based on the evidence presented. Dkt. No. 25-4, p. 10.

## II. The Initial Motions for Summary Judgment

Both sides filed motions for summary judgment (Dkt. No.'s 59 and 75).[1] In his motion,

---

[1] The Defendants' motion, Dkt. No. 75, was an amended form of Dkt. No. 70, a motion for

3

Plaintiff contended that Lt. Oakes was the safe prisons program coordinator and direct supervisor of the mailroom staff. She ordered his property seized on January 17, 2019 and refused to return it or comply with TDCJ Disciplinary Rule 15.1. Arnold, Robinson, and Huey were mailroom staff who participated in the confiscation.

According to Plaintiff, TDCJ policy allows him to mail out items to be sold with notice to the Safe Prisons Coordinator, but says nothing about having to receive permission. He states signed evidence proves the items were seized and not returned, contradicting other documents that state nothing was taken. He has mailed items to art sellers on previous occasions, but this time, his artwork depicting a cattle roundup and a parrot was seized unlawfully despite his compliance with Rule 15.1. He shows the rule to the mailroom staff, and they told him they had presented it to Oakes but she told them to keep his property. Plaintiff states he has mailed out artwork to ConArt before and has a grievance from 2020 to which the response says his artwork will be picked up for mailing; he argued that the difference is that Officer Oakes is now the mailroom supervisor and is retaliating against him.

In their corrected motion for summary judgment (Dkt. No. 75), the Defendants maintained that Plaintiff has an adequate state post-deprivation remedy for the alleged loss of his property, and his claim is thus barred by the *Parratt/Hudson Doctrine*, which holds that a random and unauthorized deprivation of a prisoner's property does not violate procedural due process if the State furnishes an adequate state post-deprivation remedy. With regard to Plaintiff's substantive First Amendment claim, the Defendants argued that "Patterson has failed to provide evidence that his artwork was seized because of his viewpoint or the content of the artwork itself." The Defendants also contended that a grievance response showed that the property had been mailed out even though Plaintiff did not provide the proper notifications. The Defendants also invoked their entitlement to qualified immunity.

After review of the pleadings, the Magistrate Judge issued a Report recommending that the

---

summary judgment which through apparent clerical error contained multiple references to claims and parties not a part of this case

Defendants' motion for summary judgment be denied as to the mailroom defendants. While the Defendants argued that the claim is precluded by the *Parratt/Hudson Doctrine*, which holds that a random and unauthorized deprivation of property does not violate procedural due process if the State furnishes an adequate post-deprivation remedy, the Magistrate Judge determined that this doctrine did not cover Plaintiff's substantive First Amendment claim. *Christoph v. Young*, 567 F.App'x 268, 2014 U.S. App. LEXIS 8790, 2014 WL 1870631 (5th Cir., May 9, 2014). The Magistrate Judge observed that the Defendants furnished no authority showing that Plaintiff was required to prove that his artwork was seized because of his viewpoint or the content of the artwork itself, and the grievance response to which the Defendants pointed was unclear as to whether the property mentioned as having been mailed out was the property at issue in this lawsuit or some property taken in 2018. The Magistrate Judge concluded by stating that "the ambiguous nature of the record before the Court precludes summary judgment on this claim at this time" and recommended that the Defendants' motion be denied as to the mailroom defendants. The Magistrate Judge also recommended that Plaintiff's motion for summary judgment be denied. The district court adopted these recommendations on July 13, 2021.

**III. The Current Motion for Summary Judgment and the Response**

After the case was administratively closed pending an interlocutory appeal and reopened after the appeal was concluded, the Defendants filed an amended motion for summary judgment (Dkt. No. 105). This motion, the third motion for summary judgment filed by the Defendants, argues that on January 16, 2019, the mailroom informed Plaintiff that his outgoing mail, consisting of two art boards to be sent to "Ink from the Pen," was denied. Plaintiff was given notice of the denial and signed the denial form on January 16, 2019, and also checked the box that he would like to appeal the denial to the Director's Review Committee.

On February 11, 2019, the Director's Review Committee issued a decision upholding the mailroom's denial of the art boards as being in contradiction with inmate mail regulations. Under these regulations, the denied correspondence would be either mailed out or destroyed. While Patterson had properly requested and effected disposition of property on prior occasions, the

5

Defendants state while he asked that the property be mailed, he did not provide the recipient's address.

The Defendants contend that Plaintiff's mail was denied because he was attempting to mail two art boards through the mailroom, but illustration boards must be mailed through the unit property officer. Because they must be mailed through the property officer, they are denied in the mailroom as "non-mailable correspondence." The Defendants argue that these regulations are not punitive but serve a legitimate governmental interest in preventing the flow of contraband because the property officer can verify that the art being sent out is authorized. They note that Plaintiff states he is approved for in-cell piddling [i.e. arts and crafts], and a property officer, unlike mailroom staff, would be able to verify Patterson's approval and confirm that the art and art supplies used to create it were not contraband. If the property officer verified that it was authorized, the officer would approve the art and mail it out according to policy. The Defendants assert that this practice regulates acceptable correspondence and makes it easier for mailroom workers to inspect the voluminous number of photos and other written correspondence received by the units daily.

The Defendants state that Plaintiff could have mailed out the art boards by going through the unit property officers rather than the mailroom. They argue that Plaintiff's requested relief would put a considerable burden on mailroom staff by requiring them to inspect correspondence and also determine whether it was authorized property or contraband. The Defendants assert their entitlement to qualified immunity and state that Plaintiff has not shown entitlement to declaratory or injunctive relief.

With regard to claims of retaliation, the Defendants maintain that Plaintiff's conclusory, self-serving assertions are not sufficient to support a retaliation claim. Finally, the Defendants claim that Plaintiff has not shown entitlement to punitive damages.

In his response to the amended motion, Plaintiff says that the Defendants claim he selected the disposition of the property but failed to provide the recipient's address; however, he was told by the mailroom staff that no disposition could occur until after the Director Review Committee's decision, and that he would be called out later to mail out the items if the Committee decided that

6

way. He also stated that the artwork in question was already in a postage paid addressed envelope. Although the form gives options for the items being mailed, destroyed, or filed, none of the boxes are checked, nor is the form signed. Plaintiff contends that there is no date of disposition showing when the property was destroyed, or if such destruction took place before or after the Committee's decision.

Plaintiff further states that under the Training Manual for Mailroom Staff policies, the DRC form and the stamped envelope is to be returned to the mailroom when disposition is ready to be made, but there was already a stamped and addressed envelope and the disposition was checked on the form. Thus, under policy, Plaintiff argues that his stamped envelope should have been returned to him when he decided to appeal to the DRC. He also contends that he was supposed to be notified up to three times if there was a failure to provide an additional address. Furthermore, the property is supposed to be held by the mailroom staff for use in any legal proceedings contemplated by the offender, as Plaintiff says he expressed in I-60 inmate request forms and grievances. He argues that the training manual itself shows that the prison officials could not have destroyed his property without permission and without filling out the disposition form by checking "destroyed" and signing it.

Plaintiff argues that policies were violated in 11 different ways in the handling of his property, including no disposition being checked on the form, no file was created after he filed a grievance, his property was destroyed without regard for several rules and without his written permission, the stamps and envelopes already in the mailroom's possession were not returned to him, no notifications were given to him of intent to destroy his property, his written requests and grievances were deliberately ignored, his property was destroyed 30 days too soon, and his litigation was not verified to be active. He also contends that the mailroom could have simply sent his items to the property room if the property officer was supposed to handle it, and that it does not make sense to say that the items were considered "contraband" when he did not receive a disciplinary case for contraband.

Plaintiff argues that the commission of 11 mistakes in handling his property indicates evil

intent, particularly since he "just happened" to have sued Officer Oakes previously, and she "just happened" to be the mailroom supervisor. He lists a number of facts he says are in dispute and argues that a jury trial is necessary.

## IV. The Summary Judgment Evidence

The Defendants furnish a copy of the unit denial form showing that on January 16, 2019, Plaintiff was notified that correspondence to "Ink from the Pen" was denied, consisting of two art boards. The reason given was "cannot sell for monetary gain." The form states that Plaintiff wishes to appeal the decision. Below this section, it states that disposition is allowed and must be checked at the time of denial, unless security concerns mandate that the offender not be given a choice of disposition per Board Policy 03.91. A box for "send to the following person at the offender's expense" is checked, but the name and address is blank. The form is signed by Plaintiff and by employee P. Robinson. Dkt. No. 105-2, p. 7.

There is an attached letter from Plaintiff to a person named Pamela Delgado, to whom he was apparently sending the art boards. The letter says that Plaintiff wants to sell the boards and have her send him the money, and also asks if she can be his agent for a childrens' book he wants to publish. Dkt. No. 105-2, p. 12.

On February 12, 2019, the Directors Review Committee upheld the unit decision to not allow Plaintiff to mail the two art boards. Dkt. No. 105-2, p. 6. The Defendants also include a copy of Board Policy 03.91, containing the Uniform Inmate Correspondence Rules, and the Training Manual for Mailroom Staff.

Plaintiff's summary judgment evidence includes the Directors Review Committee appeal form upholding the unit decision not to allow the mailing, and the form signed by Plaintiff and Robinson stating that the mailing was denied. Plaintiff also includes an excerpt from BP 03.91 regarding the handling of denied items and an excerpt from the Training Manual, also regarding the handling of denied items.

## V. Discussion

A. Legal Standards for Summary Judgment

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Burleson v. Texas Department of Criminal Justice*, 393 F.3d 577, 589 (5th Cir. 2004); Fed. R. Civ. P. 56. The party that moves for summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrates the absence of a genuine issue of material fact. *Tubacex Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party fails to meet this initial burden, the motion must be denied regardless of the non-movant's response. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

However, if the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial. *Id.*, *citing Allen v. Rapides Parish School Board*, 204 F.3d 619, 621 (5th Cir. 2000).

To avoid summary judgment, the non-moving party must adduce admissible evidence which creates a fact issue concerning existence of every essential component of that party's case; unsubstantiated assertions of actual dispute will not suffice. *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992), *citing Celotex Corp.,* 477 U.S. at 323. Once the defendant has shifted the burden to the plaintiff by properly supporting his motion for summary judgment with competent evidence indicating an absence of genuine issues of material fact, the plaintiff cannot meet his burden by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of

9

the non-movant. *Little*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Boudreaux v. Swift Transportation Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

B. Application of the Standards to the Present Case

The Defendants' motion for summary judgment states as follows:

In this case, the outgoing mail was denied because Patterson was attempting to mail two art boards. Ex. B 0006. Pursuant to the Special Directives for Outgoing Mail in the Training Manual for Mailroom Staff, illustration boards must be mailed via the unit property officer. Ex. C 0011. Illustration boards are denied in the mailroom as non-mailable correspondence because such in-cell recreational art items must be mailed via property officer. Ex. C 0074.

...

The goal of the inmate mail regulation at issue here is not punitive. Rather, by requiring in-cell recreational art to be mailed by the property officer, TDCJ ensures that the property officer can verify that the art being sent out is authorized. Authorized property refers to those items an offender is allowed to possess or obtain while in the custody of TDCJ. Ex A 0045. In this case, Patterson claims he was approved for in-cell piddling. ECF No. 25. A property officer, unlike mailroom staff, would be able to verify Patterson was approved for in-cell piddling and confirm that the art and art supplies used to create it were not contraband. Contraband is defined as any physical item that presents a threat to the safety or security of the staff, inmates, institution, or the public. Ex A 0032. If the property officer verified that it was authorized, then the property officer would approve the art and mail it out

Although the Defendants argue that the property was rejected because it was not sent out through the property officer, the summary judgment evidence which they provided states that Plaintiff's mailing was rejected for the reason given of "cannot sell for monetary gain." The summary judgment evidence contains no indication that the mailing was rejected because Plaintiff was supposed to mail it through the property officer.

None of the citations to the record provided by the Defendants indicate that Plaintiff's mailing was rejected because it was supposed to go through the property officer. Exhibit B-006 is the correspondence denial form which states that correspondence to Ink from the Pen was denied because "2 boards cannot sell for monetary gain." Exhibit C-0011 is an excerpt from the training manual for mailroom staff and says in relevant part that "illustration boards and drawings done on handkerchiefs must be mailed via the unit property officer. If submitted for mailing thru the unit mailroom, return to the offender using the non-mailable." Plaintiff maintains that his art boards

were not returned to him and the summary judgment does not clearly show otherwise.

Exhibit C-0074, another excerpt from the training manual, is an example of a form to be used when property is returned to the inmate as non-mailable. The form includes the possible explanations of (1) "has an incorrect return address per Board Policy 03.91," (2) "has an incorrect address for the legal, special, or media correspondent," and (3) "in-cell recreational art items must be mailed via property officer." There is no indication that any such form was used to return Plaintiff's art boards to him.

Exhibit A-0045 is TDCJ Administrative Directive 03.72, comprising 93 pages, governing inmate property. Exhibit A-0032 is TDCJ Administrative Directive 03.91, comprising 14 pages, governing inmate correspondence rules. Neither of these administrative directives contain any rules governing whether or not inmates can sell art for monetary gain; Administrative Directive 03.72 refers to another directive, AD-14.59, governing "offender craft shop participation and craft sales," but this directive is not before the Court, nor does it appear to be available online.

The TDCJ Offender Orientation Handbook sets out rules for inmates to be approved to use the offender craft shop and says that "advanced in-cell piddling programs exist at the warden's discretion. Advanced in-cell offenders shall meet the above rules [i.e. the rules applicable to the craft shop] in order to participate in the craft shop program." The handbook also says that "the sale of any artwork from the basic in-cell art program is prohibited." *See* https://www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf, pp. 38-39. The Defendants acknowledge that Plaintiff claims he has been approved for in-cell piddling and offer nothing to refute this.[2]

A review of the Defendants' motion for summary judgment shows that the Defendants have failed to meet their initial burden of showing that there are no disputed issues of fact and that they

---

[2] This approval for in-cell piddling presumably means that Plaintiff's art fell under "advanced in-cell piddling," which apparently can be sold under AD 14.59, and not the "basic in-cell art program," which cannot be sold. However, the evidence before the Court does not make this clear.

11

are entitled to judgment as a matter of law. Their motion for summary judgment, which argues that the art boards were denied because Plaintiff should have mailed them out through the property officer, conflicts with the summary judgment evidence that they themselves provided, which shows that the art boards were denied because Plaintiff was not allowed to sell them for monetary gain. The motion for summary judgment does not even mention a denial based on sending out artwork for monetary gain, which was the sole reason for the denial set out in the summary judgment evidence; as such, the motion for summary judgment cannot show that there are no disputed issues of fact, much less that the Defendants are entitled to judgment as a matter of law. Because the Defendants did not meet their initial burden, the motion for summary judgment should be denied. *Little*, 37 F.3d at 1075.

The Defendants maintain that Plaintiff's conclusory, self-serving assertions are not sufficient to support a retaliation claim. The Fifth Circuit has held that to state a valid claim for retaliation under §1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Hines v. Marshall*, slip op. no. 20-40444, 2021 U.S. App. LEXIS 29623, 2021 WL 4515392 (5th Cir., October 1, 2021), *citing Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999); *see also Petzold v. Rostollan*, 946 F.3d 242, 252 (5th Cir. 2019).

This requirement places a heavy burden upon inmates, because mere conclusionary allegations will not suffice; instead, the inmate must produce direct evidence of retaliation or, the more probable scenario, a chronology of events from which retaliation may plausibly be inferred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). The relevant showing must be more than the prisoner's personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997), *citing Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995).

Plaintiff here alleges that he complied with TDCJ regulations and was allowed to sent out artwork for sale until Officer Oakes, whom he had previously sued, became the mailroom supervisor. She then ordered his artwork confiscated despite his compliance with the regulations. On the record before the Court, this allegation sets out a chronology of events from which retaliation

12

may plausibly be inferred. *See Leggett v. Comer*, 280 F.App'x 333, 2008 U.S. App. LEXIS 10679, 2008 WL 2094411 (5th Cir., May 19, 2008) (claim of confiscation of a substantial amount of personal property after inmate began a letter-writing campaign against prison officials adequately set out a chronology of events from which retaliation may be inferred). The Defendants' motion for summary judgment on the issue of retaliation likewise cannot be granted.

## RECOMMENDATION

It is accordingly recommended the Defendants' second amended motion for summary judgment (Dkt. No. 105) be denied.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987). Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

SIGNED this the 25th day of August, 2022.

_____
J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE